## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Antwone Christopher Kitchens, individually and as a representative of the Classes, <br><br> Plaintiff, <br><br> v. <br><br> Conduent, Inc. <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Antwone Christopher Kitchens ("Plaintiff"), by and through his attorneys, and on behalf of himself and the consumer Classes set forth below, brings the following class action Complaint against Conduent, Inc., ("Conduent" or "Defendant") pursuant to the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and its New Jersey state counterpart, N.J.S.A. 56:11-28, *et seq.* ("NJ FCRA").

### THE PARTIES

1.     Plaintiff Antwone Christopher Kitchens is an adult resident of Levittown, Pennsylvania.

2.     Defendant Conduent, Inc. is the world's leading provider of diversified business process services. *See generally* https://www.conduent.com/ (last visited on March 15, 2019).

3.     Defendant is a New York corporation and headquartered in New Jersey.

### JURISDICTION AND VENUE

4.     This Court has jurisdiction over Plaintiff's claims under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiff's claim under the NJ FCRA under 28 U.S.C. § 1367.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, and Defendant is headquartered in this District.

## STATUTORY BACKGROUND

6.      Enacted in 1970, the FCRA's passage was driven in part by two related concerns: First, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

7.      While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

8.      Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

9.      Through the FCRA, Congress required employers to disclose that a consumer report may be obtained for employment purposes before procuring the report.  15 U.S.C. § 1681b(b)(2)(A)(i).

10.      The FCRA requires that any person who uses a report for employment purposes must:

before taking any adverse action based in whole or in part on the report . . . provide

to the consumer to whom the report relates –

(a) a copy of the report; and

(b) a description in writing of the rights of the consumer under this

subchapter, as prescribed by the [Consumer Financial Protection] Bureau

under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3).

11.     The FCRA defines adverse action as "a denial of employment or any other decision

for employment purposes that adversely affects any current or prospective employee" and/or as

"any action taken or determination that is . . . adverse to the interests of the consumer." *See* 15

U.S.C. §§ 1681a(k)(1)(B)(ii), 1681a(k)(1)(B)(iv)(II).

12.     The pre-adverse action notification provision protects applicants and employees by

"provid[ing] the consumer with knowledge of information the [consumer reporting agency] has

reported about him or her that is going to result in adverse action in an employment context,

affording the individual an opportunity to respond to it." FTC Advisory Opinion to Leathers (Sept.

9, 1998), available at 1998 WL 34323725; *see also Moore v. Rite Aid Hdqtrs. Corp.*, No. 13-cv-

1515, 2015 WL 3444227, at *4 (E.D. Pa. May 29, 2015) (citing *Goode v. LexisNexis Risk & Info.

Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012)) ("Section 1681b(b)(3)(A) thus

requires an employer to provide job applicants with their background report, summary of rights,

and a 'real opportunity' to contest the contents of the background report before the employer relies

on the report to take an adverse action against the applicant."). This requirement is particularly

important "where the information contained in the report (such as a criminal record) would

automatically disqualify the individual from employment," so that the consumer has a chance to

address the information "in case the report is inaccurate." FTC Advisory Opinion to Rosen (June

9, 1998), available at 1998 WL 34323763.

13.     Furthermore, upon reviewing the results of the report, an individual's ability to

"provid[e] context [to the employer] may be more valuable than contesting accuracy." *Sharp v. Technicolor Videocassette of Michigan, Inc.*, No. 2:18-CV-02325-CGC, 2019 WL 167423, at *3 (W.D. Tenn. Jan. 10, 2019) (quoting *Robertson v. Allied Solution*s, 902 F.3d 690, 696 (7th Cir. 2018). This requirement "may also enable [an individual] to advocate for [the report] to be used fairly — such as by explaining why true but negative information is irrelevant to his fitness for the job." *Id.* (quoting *Long v. Se. Pennsylvania Transportation Auth*., 903 F.3d 312, 319 (3d Cir. 2018), *reh'g denied* (Oct. 5, 2018).

14.     Before they procure any background reports, users of consumer reports for employment purposes must certify to the consumer reporting agency that they have complied with the FCRA's pre-adverse action notice provisions. 15 U.S.C. § 1681b(b)(1).

15.     The pre-adverse action notice provision puts consumers on notice that the report is being used to make an adverse employment decision against them.  This knowledge enables consumers to exercise a variety of other substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness.  15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

16.     The New Jersey Fair Credit Reporting Act contains the same pre-adverse action notice requirement. N.J.S.A. 56:11-31(e).

17.     As discussed below, Defendant routinely violated the FCRA and the NJ FCRA, and consumers' rights, by failing to provide the required copy of the consumer report before taking adverse action against consumers.

**ALLEGATIONS RELATING TO PLAINTIFF**

18.     On or around September 2018, Plaintiff applied to work for Defendant as a Benefits Associate II in New Jersey using Defendant's online job application.

19.     On September 19, 2018, Plaintiff received an offer of employment from Defendant for a Benefits Associate II position.

20.     Defendant's offer of employment was subject to a background check.

21.     Defendant procures background checks from First Advantage.

22.     First Advantage is a consumer reporting agency because its sells background reports for employment purposes. *See generally* https://fadv.com/ (last visited on March 15, 2019).

23.     Defendant procured a report on Plaintiff for employment purposes from First Advantage, on or around October 2018.

24.     Because the background report contained information regarding whether Plaintiff had a criminal history, the background check contained information regarding Plaintiff's "character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d).

25.     Because the background report contained information regarding Plaintiff's "character, general reputation, personal characteristics, or mode of living," the background check was a consumer report as defined under the FCRA. 15 U.S.C. § 1681a(d).

26.     Defendant made the decision to rescind Plaintiff's offer of employment based upon the information in Plaintiff's background report.

27.     On or around October 2, 2018, Plaintiff received a letter from Defendant rescinding

the offer of employment extended to him on September 19, 2018. The letter directed Plaintiff to contact his recruiter for further information. (Ex. 1).

28.     Defendant's October 2, 2018 letter, where it informed Plaintiff that it was taking adverse action by rescinding his offer of employment, was not accompanied by a copy of his report, a summary of rights under the FCRA, or any opportunity to dispute any information included in his report prior to rescinding his offer of employment. (Ex. 1).

29.     On or around October 10, 2018, Plaintiff contacted Defendant to request a copy of his background report and a copy of his employment application.

30.     That same day, Plaintiff received an email from Defendant informing him to contact First Advantage for the report. Defendant explained that Plaintiff was not provided his report because he did not request a copy during the application process.  (Ex. 2).

31.     On the next day, October 11, 2018, Plaintiff received another email from Defendant advising him to contact First Advantage for a copy of his background report. (*Id*.)

32.     By the time Defendant sent its October 2, 2018 letter, it had already taken adverse action by rescinding Plaintiff's employment offer, thus negating the pre-adverse action notice provision's purpose of putting consumers on notice that a decision is being based on a report, so that the consumer can ensure the report being used is accurate.

33.     Instead, Defendant put the onus on Plaintiff to request a copy of his report.

34.     Defendant's failure to provide Plaintiff with a copy of the background check prior to Defendant making a decision to rescind Plaintiff's employment deprived Plaintiff of the opportunity to explain or dispute the results if his background check.

## ALLEGATIONS RELATING TO DEFENDANT'S PRACTICES

35.     The text of the FCRA is pellucid and clear.  Defendant is required to provide

applicants and employees with pre-adverse action notice and a copy of the consumer report prior to taking adverse action against them as required by 15 U.S.C. § 1681b(b)(3).

36.    The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's pre-adverse action notice requirements.  *See* 15 U.S.C. § 1681b(b)(1).

37.    In accordance with their standard procedures, the consumer reporting agencies from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint, required Defendant to certify that it would comply with the pre-adverse action notice provisions of the FCRA.

38.    Before procuring Plaintiff's report, Defendant did, in fact, certify to consumer reporting agencies that it would comply with the pre-adverse action notice provisions of the FCRA.

39.    In violation of 15 U.S.C. § 1681b(b)(3)(A), Defendant has taken adverse action against Plaintiff, and other class members, based on undisclosed consumer report information, without first providing Plaintiff and other class members with a copy of the pertinent consumer reports and a summary of their rights, and without providing them a reasonable opportunity to correct any inaccuracies or explain their backgrounds.

40.    As a result of Defendant's failure to comply with the FCRA's pre-adverse action notice requirements, Plaintiff experienced a concrete injury in the form of being deprived a copy of his report, and a summary of rights, to which he was statutorily entitled, as a result of Defendant's failure to comply with the FCRA's pre-adverse action notice requirements.

41.    It is well recognized that "taking an adverse employment action without providing the required consumer report is the very harm that Congress sought to prevent, arising from prototypical conduct proscribed by the FCRA." *Long v. Se. Pennsylvania Transportation Auth.*,

903 F.3d 312, 324 (3d Cir. 2018) (internal quotation marks omitted).

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings Count I on behalf of the proposed **FCRA Pre-Adverse Action**

**Notice Class** defined as follows:

> All individuals whom Defendant took adverse action against based in whole
> or in part on information contained in a consumer report within the two
> years predating the filing of this Complaint and continuing through the date
> the class list is prepared.

43.     Plaintiff brings Count II on behalf of the proposed **NJ FCRA Pre-Adverse Action**

**Notice Class** defined as follows:

> All individuals who sought employment in New Jersey on whom Defendant
> took adverse action against based in whole or in part on information
> contained in a consumer report within the six years predating the filing of
> this Complaint and continuing through the date the class list is prepared.

44.     Numerosity: The Classes are so numerous that joinder of all class members is

impracticable.  Defendant is a large company that has hundreds, if not thousands, of job applicants

seeking employment in the last five years.

45.     Commonality:  Common questions of law and fact exist as to all members of the

Classes and predominate over any questions solely affecting individual members, including but

not limited to:

> a)  Whether Defendant violated the FCRA and NJ FCRA by taking adverse actions
>     on the basis of information in consumer reports, without first furnishing copies
>     of the reports and providing a summary of rights to the affected persons;
>
> b)  Whether Defendant's violations of the FCRA and NJ FCRA were negligent,
>     knowing, and/or willful;
>
> c)  The proper measure of statutory damages; and
>
> d)  The proper measure of punitive damages.

46.     Typicality: Plaintiff's claims are typical of the members of the Classes.  It is typical

of Defendant to take adverse action against employees and applicants without first providing a copy of the relevant consumer report and a summary of the individual's rights. The FCRA and NJ FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

47.     Adequacy:  Plaintiff is a member of the Classes and will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation generally, and in FCRA litigation in particular.

48.     Class certification is appropriate under Rule 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and NJ FCRA.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendant by any members of the Classes on an individual basis.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

**CLAIMS FOR RELIEF**

**COUNT I**
***Failure to Provide Pre-Adverse Action Notice***
**15 U.S.C. § 1681b(b)(3)(A)**
**(On Behalf of Plaintiff and the FCRA Pre-Adverse Action Notice Class)**

49.     Defendant violated the FCRA by failing to provide Plaintiff and the FCRA Pre-Adverse Action Notice Class members with a copy of the consumer report that was used to take adverse employment action against them.  *See* 15 U.S.C. § 1681b(b)(3)(A).

50.     Defendant acted negligently and/or willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other FCRA Pre-Adverse Action Notice Class members.

51.     Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(3)(A).

52.     Defendant's willful conduct is further reflected by the following:

(a)     The FCRA's pre-adverse action notice provision was enacted in 1996, Defendant has had since its enactment to become compliant;

(b)     Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c)     Despite the pellucid statutory text and there being a depth of guidance, Defendant has adopted a policy of taking adverse action without first providing a copy of the consumer's report and a summary of his or her rights; and

(d)     By adopting such a policy, Defendant voluntarily ran a risk of violating the

law substantially greater than the risk associated with a reading that was merely careless.

53.     Plaintiff and the FCRA Pre-Adverse Action Notice Class members are entitled to actual and/or statutory damages of not less than $100 and not more than $1,000, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681o, 1681n.

## COUNT II
### *Failure to Provide Pre-Adverse Action Notice*
### N.J.S.A. 56:11-28, *et seq.*
### (On Behalf of Plaintiff and the NJ FCRA Pre-Adverse Action Notice Class)

54.     Defendant violated the NJ FCRA by failing to provide Plaintiff and the NJ FCRA Pre-Adverse Action Notice Class members with a copy of the consumer report that was used to take adverse employment action against them. *See* N.J.S.A. 56:11-31(e).

55.      Defendant acted negligently and/or willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other NJ FCRA Pre-Adverse Action Notice Class members.

56.     Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in N.J.S.A. 56:11-31, and that Defendant certified that it would comply with N.J.S.A 56:11-31.

57.     Defendant's willful conduct is further reflected by the following:

(a)     The NJ FCRA's pre-adverse action notice provision was enacted in 1997, Defendant has had since its enactment to become compliant;

(b)     Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the FCRA and its New Jersey state counterpart;

(c)     Despite the pellucid statutory text and there being a depth of guidance,

Defendant has adopted a policy of taking adverse action without first providing a copy of the consumer's report and a summary of his or her rights; and

(d)     By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

58.     Plaintiff and the FCRA Pre-Adverse Action Notice Class members are entitled to actual and/or statutory damages of not less than $100 and not more than $1,000, punitive damages, and attorneys' fees and costs pursuant to N.J.SA. 56:11-38-39.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a) determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3);

b) designating Plaintiff as representative for the Classes and designating Plaintiff's counsel as counsel for the Classes;

c) issuing proper notice to the Classes at Defendant's expense;

d) declaring that Defendant committed multiple, separate violations of the FCRA and NJ FCRA;

e) declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA and NJ FCRA;

f) awarding actual statutory and punitive damages as provided by the FCRA and NJ FCRA;

g) awarding reasonable attorneys' fees and costs as provided by the FCRA and NJ FCRA; and

h) granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA and NJ FCRA.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff and the Classes demand a trial by jury.

Dated: March 29, 2019

By:     /s/ John Bielski

John Bielski (NJ Bar No. 042142000)
Ryan Allen Hancock (PA Bar 92590)
WILLIG, WILLIAMS, & DAVIDSON
1845 Walnut St., 24th Floor
Philadelphia, PA 19103
Telephone: (215) 656-3600
Facsimile: (215) 561-5135
jbielski@wwdlaw.com
rhancock@wwdlaw.com

E. Michelle Drake (MN Bar No. 0387366)
John G. Albanese (MN Bar No. 0395882)
BERGER & MONTAGUE, P.C.
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
Facsimile: (612) 584-4470
emdrake@bm.net
jalbanese@bm.net

*Attorneys for Plaintiff and the Proposed Classes*